## DELAUNE v. GAMBINO.
### No. 14768.

Court of Appeal of Louisiana. Orleans.
May 27, 1935.

Henry G. Huckabee and Sidney G. Roos, both of New Orleans, for appellant.

Ernest M. Conzelmann, of Gretna, for appellee.

LECHE, Judge.

Plaintiff has prosecuted this appeal from an adverse judgment. On the 9th day of September, 1931, plaintiff and defendant entered into the following written agreement:

"Proposition made to Mike Gambino for the sinking of one two inch well at his dairy farm located about 1½ miles from Marrero, La.

"I propose sinking one two inch well to gavel strata, furnishing all labor tools and machinery for doing work, one two inch strainer covered with brass wire gauze of 30 mesh protected with a steel wire cloth with ¼ inch holes and of 20 feet length, strainer pipe to be galvanized pipe of standard make.

"For the price and sum of one (1.00) dollar per foot, it being understood that Gambino is to furnish me sufficient 2 inch galvanized pipe for the full depth of well, it being figured approximated 250 feet.

"It is further understood that I will furnish the strainer of 20 feet and that these 20 feet are to be deducted from the full depth of the well, in figuring the price of the well, which will be at one dollar per foot in addi-

tion to 12½ feet. being credit for work done Henry Delaune.

"This proposition is to become a contract when signed by both parties.
 "Signed and accepted
 "Henry Delaune.
"It is further guaranteed that when well is completed that water is guaranteed, or no pay will be called for.
 "Henry Delaune
 "Mike Gambino."

Shortly thereafter plaintiff began work and sank a well to a depth of 515 feet. He was paid the sum of $200 by defendant, and later advanced the sum of $30, making the total payment received by him $230; and he now seeks to recover the balance of $320.55.

Defendant is engaged in the dairy business in the vicinity of Marrero, La., in the parish of Jefferson, having a herd of between 100 and 125 head of dairy cattle. It was to supply water for his cattle that defendant engaged plaintiff to sink a well on his property. The record shows that plaintiff sank the well according to specifications to a depth of 515 feet, but that within a short time thereafter the well commenced to pump sand. Plaintiff then returned and installed a new strainer of finer mesh in an effort to withhold the sand, but without success. He then sank another well according to specifications at some distance from the first well, and defendant refused payment of the balance of the contract price solely on the ground that the well did not produce sufficient water for his purpose.

An analysis of the contract shows that plaintiff bound himself to furnish all labor, tools, and machinery necessary to sink a 2-inch well to gravel strata and to furnish one 2-inch strainer covered with brass wire gauze of 30 mesh protected with a steel wire cloth with one-fourth inch holes and of 20 feet length, all to be done for the price and sum of $1 per foot, defendant to furnish the 2-inch galvanized pipe for the full depth of the well figured at approximately 250 feet. It was further agreed that in figuring the price of the well based upon its depth that the length of the strainer, that is, 20 feet, would be deducted.

 There is a general principle of law applicable to construction contracts that ordinarily a contractor cannot be held to both method and result, that is, where a contract states specifically and in detail the method of construction, the type, quality, and strength of the material, and goes into detail as to what is to be done and the manner of doing it, the owner is bound by whatever result may be obtained, provided the contract specifica-

tions are followed. On the other hand, if the contract states the result to be obtained, the details and method of construction being left to the discretion of the contractor, he is bound to produce the desired result. Applying this principle to the present contract, it will be seen at once that, had the last clause been omitted, plaintiff would be bound only to sink the well to the depth approximated, using a pipe of the diameter specified, the kind and size of strainer set forth, and defendant would have been bound to accept the result; that is, he would have been bound to pay the contract price, regardless of the quantity of water produced or whether there was any water produced at all. But the final clause of the contract says: "It is further guaranteed that when well is completed that water is guaranteed, or no pay will be called for." The question then presented is the interpretation of that clause. It must be remembered that the defense is not based on the fact that no water was produced, but on the claim that the amount produced was insufficient for defendant's purpose. There is some conflict in the testimony as to just how much water the well actually produced, but defendant admitted on cross-examination that enough water was produced for his purpose, provided the pump was operated for a sufficient length of time. He stated that in the spring it was necessary to operate the pump from six to eight hours to produce enough water, and that, when the weather was hot and dry, resulting in a greater consumption of water by his herd, it was necessary to pump from eight to twelve hours.

Our appreciation of the contract is that no specified amount of water was guaranteed by plaintiff. Had this been the intention of the parties, it would have been a very easy matter to word the contract differently. For instance, so many gallons of water could have been specified within a certain number of hours depending upon the size and capacity of the pump, or a flowing well delivering a specified number of gallons through a pipe of particular dimensions could have been specified, but this was not done. Plaintiff was not familiar with the particular locality, and had never before sunk a well in the immediate vicinity. He did not know to what depth to go to reach water or just how much could be produced when it was reached. He contracted to drive a 2-inch pipe to a certain depth approximated at 250 feet and to produce water in no given or specified amount. He sank the first well to a depth of 515 feet, and, although this well did produce water, he was not satisfied with the result, and conscientiously sank the second well to a somewhat

greater depth. There could be no doubt as to his good faith in the matter. Defendant was guaranteed a well that produced water. He received a well that did ·produce water and that produced enough water for his purpose if the pump was operated a sufficient number of hours per day. Defendant frankly admits that he did not contract for a flowing well; that he knew that the water would have to be pumped, and there is no guaranty in the contract, express ·or implied, that any certain amount of water ·would be produced or that any certain number of hours of pumping would be necessary. Plaintiff does not seek to recover for the price of two wells, but asks only for the balance due him for the cost of construction of one well, and it is our opinion that his claim is well founded.

It is ordered, adjudged, and decreed that the judgment appealed from be and it is annulled, avoided, and reversed, and it is now ordered that there be judgment in favor of plaintiff, Henry Delaune; and against defendant, Mike Gambino, in the full sum of $320.55, together with legal interest from judicial demand until paid and for all costs.

Reversed.